UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAMIEN REID,

                Petitioner,

v.

RANDEE REWERTS,

                Respondent.

_____/

Case No. 1:18-cv-636

Honorable Gordon J. Quist

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Damien Reid is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Michigan.  Following a seven-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83; being a felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f; carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227; and possession of a firearm during the commission of a felony (felony firearm), in violation of Mich. Comp. Laws § 750.227b.  On September 10, 2014, the court sentenced Petitioner as a fourth-offense felony offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 27 years to 39 years and 7 months on the assault-with-intent-to-murder conviction and 5 years to 8 years and 4 months on the carrying-concealed and felon-in-possession convictions, all to run consecutively to a sentence of 2 years on the felony-firearm conviction.

        On May 4, 2018, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

I.      [PETITIONER] WAS DENIED DUE PROCESS AND A FAIR TRIAL
WHERE THE PROSECUTOR'S WITNESSES WERE ALLOWED TO
INVADE THE FACT FINDING PROVINCE OF THE JURY.

II.     [PETITIONER] WAS DENIED HIS CONSTITUTIONAL RIGHT TO A
FAIR TRIAL BEFORE AN IMPARTIAL JURY.

III.    [PETITIONER] IS ENTITLED TO A NEW TRIAL AS HE WAS DENIED
EFFECTIVE ASSISTANCE OF COUNSEL.

IV.     [PETITIONER] IS ENTITLED TO BE REMANDED FOR A CROSBY
PROCEDURE AND POSSIBLE RE-SENTENCING BECAUSE THE
FACTS IN SUPPORT OF SOME OF HIS OFFENSE VARIABLE
SCORES WERE NOT FOUND BY THE JURY TO BE PROVEN
BEYOND A REASONABLE DOUBT, HE WAS SENTENCED PRIOR
TO JULY 29, 2015, AND THE SIXTH AMENDMENT VIOLATION
ALTERED THE GUIDELINE RANGE.

(Pet., ECF No. 1, PageID.6-10; Pet'r's Appeal Br., ECF No. 1-1, PageID.19.)[1]  Respondent has

filed an answer to the petition (ECF No. 15) stating that the grounds should be denied because they

are non-cognizable, procedurally defaulted, meritless, and/or moot.  Upon review and applying the

standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat.

1214 (AEDPA), I find that the grounds are meritless or procedurally defaulted.  Accordingly, I

recommend that the petition be denied.

<u>**Discussion**</u>

## I.      **Factual allegations**

The Michigan Court of Appeals described the facts underlying Petitioner's

conviction as follows:

> Reid was involved in a shooting at a party store in Lansing.  On the day of the
> shooting, Willard Payne, with whom Reid had an ongoing dispute, entered the party
> store as Reid was inside.  Payne quickly left the store.  Reid followed Payne into
> the parking lot and fired several shots in his direction.  One of these shots struck

---

[1] Petitioner proposed additional habeas grounds relating to alleged state pressure on witness Dushawn Lee to offer
perjurious testimony.  (Pet'r's Mot. to Stay, ECF No. 9, PageID.92.)  Petitioner had not exhausted those issues in the
state courts and failed to adequately support a request to stay this proceeding while he exhausted his state court
remedies.  (Op. and Order, ECF Nos. 11, 12.)

the arm of Catherine Taylor, who was sitting inside her car in the parking lot. Various witnesses, including Reid's friend William Johnson, his cousin Dushawn Lee, and Officer John Lomakoski, identified Reid in the party store's surveillance footage.

(Mich. Ct. App. Op., ECF No. 16-19, PageID.640.)  The jury deliberated for about a day before finding Petitioner guilty on all charges.

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising the same four issues he raises in his habeas petition. (Pet'r's Br. on Appeal, ECF No. 16-19, PageID.725-779.)  In an unpublished opinion issued on September 13, 2016, the court of appeals affirmed the convictions, but remanded the case to the trial court for consideration of whether resentencing was proper under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  (Mich. Ct. App. Op., ECF No. 16-19, PageID.640-644.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court.  (Pet'r's Appl. for Leave to Appeal, ECF No. 16-20, PageID.847-897.)  Petitioner raised the first three of the four issues he had raised in the court of appeals.  By virtue of the court of appeals' order of remand, Petitioner had already prevailed on the fourth issue.  By order entered April 4, 2017, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 16-20, PageID.846.)

After the Michigan Supreme Court denied leave to appeal, the trial court considered the sentencing issue that was the subject of the remand order from the court of appeals.  By order entered May 11, 2017, the trial court stated:

On May 7, 2017, Defendant informed the Court that he did wish to seek resentencing.  Likewise, the Court obtained the views of both the defense and the prosecution in this matter regarding whether Defendant should be resentenced. After a careful consideration of the circumstances that existed at the time of the original sentencing, which in this case was on September 10, 2014, the Court finds that it would not have imposed a materially different sentence if the guidelines had been merely advisory and not mandatory.  As a result, the Court finds the

3

resentencing is not necessary, and Defendant's original sentence shall remain in place.

(Ingham Cty. Cir. Ct. Order, ECF No. 16-21, PageID.930-931.)

Petitioner filed an appeal of that order. (Claim of Appeal, ECF No. 16-21, PageID.910-911.) However, he stipulated to dismiss that appeal (Stip., ECF No. 16-21, PageID.935), and the court of appeals entered an order dismissing the appeal on September 5, 2017. (Mich. Ct. App. Order, ECF No. 16-21, PageID.909.) Petitioner did not pursue the matter further in the Michigan Supreme Court. (Aff. of Supreme Court Clerk, ECF No. 16-22.) Instead, Petitioner timely filed this petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th

Cir. 1989).

### III.    Invading the province of the jury

Petitioner first contends that he was denied due process and a fair trial because the

prosecutor elicited testimony from several witnesses—Petitioner's friend, William Johnson,

Petitioner's cousin Dushawn Lee, Officer John Lomakoski and Detective Hogan—who identified

Petitioner as the person depicted on the surveillance video from the store.  Petitioner claims that

such testimony was unfair because it invaded the province of the jury.

The Michigan Court of Appeals concluded that the testimony was admissible under

state law, at least with respect to witnesses Johnson, Lee, and Lomakoski.  The court explained:

> "A witness may not testify to a matter unless evidence is introduced sufficient to
> support a finding that the witness has personal knowledge of the matter."  MRE
> 602.  A witness's opinion testimony regarding whether the defendant is the person
> depicted in video footage or still photographs is inadmissible when the witness is
> in no better position than the jury to make an identification from a video or
> photograph. *People v Fomby*, 300 Mich App 46, 52-53; 831 NW2d 887 (2013).  In
> this case, Johnson and Lee both knew Reid personally—Johnson as a friend, and
> Lee as a cousin—and Officer Lomakoski testified that he was familiar with Reid
> because he regularly worked in Reid's neighborhood.  These witnesses had
> personal knowledge of Reid's identity and were in a better position than the jury to
> opine whether the photographs depicted Reid.  Accordingly, their testimony did not
> improperly invade the province of the jury.

(Mich. Ct. App. Op., ECF No. 16-19, PageID.641.)  Detective Hogan, however, had no prior

knowledge of Petitioner.  The court of appeals concluded that his opinion testimony identifying

Petitioner as the person in the video was improper.  (*Id*.)  Nonetheless, the appellate court let the

convictions stand because Hogan's testimony was cumulative of the testimony of Johnson, Lee,

and Lomakoski, such that the error was harmless.  (*Id*.)

### A.  Testimony of Johnson, Lee, and Lomakoski

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

The court of appeals determined that, as a matter of state law, the testimony of Johnson, Lee, and Lomakoski identifying Petitioner as the gunman in the video was admissible as lay opinion testimony under Michigan Rule of Evidence 701 because the witnesses had personal knowledge regarding Petitioner's appearance as required under Michigan Rule of Evidence 602.

The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Thus, this Court is bound by the state appellate court's determination that the testimony was admissible under the state rules of evidence.

Petitioner's challenge goes beyond a potential state rule violation when he claims that the testimony invaded the province of the jury.  He has failed to show, however, that the testimony at issue improperly invaded the province of the jury or that such an invasion would be contrary to clearly established federal law.

Petitioner has not cited any Supreme Court cases holding that witnesses may not provide lay opinion testimony identifying a person in a photograph or video where the witness has knowledge regarding the person's appearance.  Indeed, such testimony is permitted under the parallel Federal Rules of Civil Procedure.  *See, e.g., United States v. Houston*, 813 F.3d 282, 291-92 (6th Cir. 2016).

Moreover, even if such testimony might be deemed an invasion of the province of the jury, Petitioner has not cited any Supreme Court cases declaring that the introduction of such testimony rises to the level of a due process violation.   Interpreting the Federal Rules of Evidence, the Supreme Court in *United States v. Johnson*, 319 U.S. 503 (1943), considered the admissibility of expert testimony that was challenged because it "invaded the jury's province."  *Id*. at 519.  The court was not troubled by the fact that the expert testified regarding ultimate issues:

> No issue was withdrawn from the jury.  The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury.  The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony.  The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence.  The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more

8

> than that they were bound by the calculations made by the defense's expert based
> on the defendants' assumptions of the case.  So long as proper guidance by a trial
> court leaves the jury free to exercise its untrammeled judgment upon the worth and
> weight of testimony, and nothing is done to impair its freedom to bring in its verdict
> and not someone else's, we ought not be too finicky or fearful in allowing some
> discretion to trial judges in the conduct of a trial and in the appropriate submission
> of evidence within the general framework of familiar exclusionary rules.

*Johnson*, 319 U.S. at 519-20.  Federal Rule of Evidence 704 (a) expressly states that "[a]n opinion

is not objectionable just because it embraces an ultimate issue."  *Id*.  The advisory committee notes

expressly state that principle applies to all opinions—lay and expert.  Advisory Committee Notes,

Fed. R. Civ. P. 704.  The parallel Michigan Rule of Evidence is virtually identical.  Mich. R. Evid.

704.  Federal Rule of Evidence 704 was passed for the express purpose of abolishing case law that

opined witnesses could not express opinions on ultimate issues.  Advisory Committee Notes, Fed.

R. Evid. 704.  In *United States v. Scheffer*, 523 U.S. 303 (1998), in a concurring opinion, Justice

Kennedy quoted the Advisory Committee Notes to explain the change:

> The older cases often contained strictures against allowing witnesses to express
> opinions upon ultimate issues, as a particular aspect of the rule against opinions.
> The rule was unduly restrictive, difficult of application, and generally served only
> to deprive the trier of fact of useful information.  7 Wigmore §§ 1920, 1921;
> McCormick § 12.  The basis usually assigned for the rule, to prevent the witness
> from "usurping the province of the jury," is aptly characterized as "empty rhetoric."
> 7 Wigmore § 1920, p. 17.

*Scheffer*, 523 U.S. at 319.

Even though the rules do not preclude testimony regarding ultimate issues, opinion

testimony is still subject to limits.  Federal Rule of Evidence 701—and the parallel Michigan

rule—require that the opinion testimony be "rationally based on the perception of the witness" and

helpful to [a clear understanding of] the witness' testimony or [the determination of] a fact in

issue."  Fed. R. Evid. 701; Mich. Rule Evid. 701.  As noted above, however, the appellate court's

determination that the testimony here satisfied those requirements is binding on this Court.

Accordingly, Petitioner has failed to show that the state court's determination allowing the

testimony is contrary to, or an unreasonable application of, clearly established federal law, and he is not entitled to habeas relief on this claim.

### B.  Testimony of Detective Hogan

The Michigan Court of Appeals concluded that the testimony of Detective Hogan did not meet the requirements of Michigan Rule of Evidence 701 because Hogan did not have prior knowledge regarding Petitioner's appearance.   Yet, the appellate court permitted the convictions to stand because it concluded the error was harmless.   "State courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable."  *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015)).

Detective Hogan relied principally on Officer Lomakoski's identification of Petitioner.  (Trial Tr. V, ECF No. 16-13, PageID.537.)  Detective Hogan testified that after Lomakoski had identified the gunman in the video as Petitioner, Hogan compared the video, or still images taken from the video, with images from Petitioner's social media account and also concluded that the person in the video was Petitioner.  (*Id.*, PageID.538.)  During Detective Hogan's trial testimony, he provided a narrative commentary on the video, or perhaps specific still images captured from the video, describing the gunman throughout as Petitioner.  (*Id.*, PageID.539-542.)

The court of appeals' conclusion that Detective Hogan's testimony was cumulative of earlier testimony from Lomakoski (Trial Tr. III, ECF No. 16-11, PageID.436-446), Lee (Trial Tr. IV, ECF No. 16-12, PageID.467-486), and Johnson (Trial Tr. III, ECF No. 16-11, PageID.424-435), is well-supported by the record.  The court's further determination that any error in the admission of Hogan's testimony was harmless is, therefore, objectively reasonable.  *See, e.g., Harrington v. California*, 395 U.S. 250, 254 (1969) ("[T]he use of cumulative evidence, though

tainted, is harmless error."); *Brown v. United States*, 411 U.S. 223, 231 (1973) ("[W]e agree . . . that the *Bruton* errors were harmless[; t]he testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury."). Because Petitioner has failed to show that the appellate court's factual determinations were unreasonable on the record or that the appellate court's determination of harmlessness is contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to habeas relief based on the admission of Detective Hogan's identification testimony.

## IV. Impartial jury

Petitioner next contends that he was denied his right to an impartial jury because two of the deliberating jurors had indicated that they knew one or more of the witnesses and because, during *voir dire*, he appeared before the panel of potential jurors in clothing that reflected his incarceration. Petitioner argues that he was denied a fair and impartial jury.

### A. Jurors who knew witnesses

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ." U.S. Const. amend. VI. The right to an impartial jury is applicable to the states via the Fourteenth Amendment. *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Further, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). "The *voir dire* is designed "'to protect [this] right by exposing possible biases, both known and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)).

The question of bias of an individual juror at a state criminal trial is one of fact. *Dennis*, 354 F.3d at 520 (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)); *see also Sizemore v. Fletcher*, 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)).   The Michigan Court of Appeals at least acknowledged the factual predicate of Petitioner's challenge to the two jurors: "Juror 11 stated that he knew two police detectives through union activities.   Juror 6 stated that she was an acquaintance of one of the police officers in college about 20 years before but could remain impartial."   (Mich. Ct. App. Op., ECF No. 16-19, PageID.641-642.)   But, the court never went beyond that because it concluded Petitioner had waived the issue when he failed to challenge either juror and then expressed his satisfaction with the jury as seated.

At the beginning of *voir dire*, the prosecutor read the names of all the witnesses that might be called.   (Trial Tr. I, ECF No. 16-9, PageID.328.)   The trial judge instructed the potential jurors that if they recognized any of the witness names, they should let him know.   (*Id.*)   Juror 11 indicated that he recognized two of the names, Officers St. Aubin and Pace.   (*Id.*, PageID.335.) The prosecutor explored the extent of Juror 11's relationship with the two proposed witnesses. (Trial Tr. I, ECF No. 16-9, PageID.335.)   The juror knew the officers through the union, he was comfortable sitting as a juror despite knowing them, and confident that he would decide the case based on the evidence rather than his relationship with the two proposed witnesses.   (*Id.*)

Juror 11 offered additional information as the *voir dire* progressed.   Of some significance was a question from Petitioner's counsel:

> Petitioner's counsel:   I guess the things that jump out at me when judging credibility, particularly with witnesses who may be cooperating, how would you judge credibility.   Would you also take into consideration they may have been given something in return for their testimony?   And would that

|  | affect your ability to believe what they say?  Juror number 11? |
|---|---|
| Juror 11: | I'll try to.  I think I heard about that.  If they were given a plea deal or something to come in and testify, my opinion might be swayed. |

(*Id.*, PageID.338.)

Only one of the two witnesses that Juror 11 recognized testified.  Officer Pace testified that he responded to a "shots fired" call a couple of weeks before the shooting at issue in Petitioner's trial.  (Trial Tr. V, ECF No. 16-13, PageID.522.)  Based on the report, he was looking for an SUV and a gray car.  (*Id.*, PageID.523.)  He found a gray car, a Chevrolet Impala, in an alley with several bullet holes.  (*Id.*)  He secured the scene.  (*Id.*)  He had no further involvement in that incident, nor was he involved in the police response to the August 1, 2013, shooting that was at issue in Petitioner trial. (*Id.*, PageID.523-524.)

Juror 6 came to the box late in the *voir dire* process.  She indicated that she recognized witness names (Trial Tr. I, ECF No. 16-9, PageID.353-354), but neither the prosecutor, defense counsel, nor the judge inquired further after she responded that she did not have "[a]ny issues on any of the questions [they] asked[.]"  (*Id.*, PageID.354.)

On the fourth day of trial, the jury heard testimony from Officer Lori Bates.  She testified that a few months after the shooting at issue in the trial, on October 25, 2013, she served as part of a "fugitive team" that attempted, unsuccessfully, to arrest Petitioner.  (Trial Tr. IV, ECF No. 16-12, PageID.486.)  At the end of that trial day, Juror 6 informed the trial court that she knew Lori Bates.  The next trial day, the court addressed the situation:

| The Court: | Juror number 6, we were advised, as I predicted, that when Officer Bates came in, I was advised that you did recognize her at that time; it that accurate? |
|---|---|
| Juror 6: | Yeah. |

| The Court: | And what's the basis of the association? |
| Juror 6: | We were acquaintances for like a year in college.  It's been like 20 years ago. |
| The Court: | Over 20 years? |
| Juror 6: | I was just surprised. |
| That Court: | That that was her? |
| Juror 6: | After I listened to her speak, I became aware I do know her. |
| The Court: | So it's over 20 years.  No contact in between? |
| Juror 6: | No. |
| The Court: | Do you feel that that relationship, 20 years ago, would interfere with you ability to be a juror in this matter? |
| Juror 6: | No. I knew it wouldn't interfere with this, but I knew I had to tell you. |
| The Court: | You do have to let us know.  It's not uncommon in the trial, but at the beginning of the trial it's just a list of names. Anything else, Mr. Roth? |
| Prosecutor: | No. |
| The Court: | Mr. Lyons? |
| Defense counsel: | None, Judge. |

(*Id.*, PageID.508.)

The Michigan Court of Appeals did not address the juror bias issue on the merits because Petitioner had waived it by not objecting to the jurors but, instead, expressing satisfaction with the jury.  Petitioner's waiver of the issue is a form of procedural default.  When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the

14

petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim.  *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Here, there can be no question that the Michigan Court of Appeals applied a procedural rule—failure to object—to bar Petitioner's claim.  It is also clear that the contemporaneous objection rule was well-established at the time of Petitioner's trial.  *See, e.g.*, *People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985).  A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee v. Kemna*, 534 U.S. 362, 385 (2002).  Petitioner's failure to comply with the state's independent and adequate state procedural rule, *i.e.*, making a contemporaneous objection, caused him to default his claims in state court.  *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011,; *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010); *Lancaster*, 324 F.3d at 437; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*,

547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.

To show cause sufficient to excuse a failure to raise claims, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Attorney error rising to the level of ineffective assistance of counsel might serve as cause to excuse a procedural default. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (quoting *McClesky*, 499 U.S. at 493-94 (quotations omitted))).

The other exception to a procedural default bar—the miscarriage-of-justice exception—only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner's submissions do not suggest actual innocence to overcome the bar of a procedural default. Instead, he indicates that the "cause" for his failure to object was the ineffective assistance of his trial counsel.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

To prevail Petitioner must show that counsel's decision to retain Juror 11 cannot be considered sound trial strategy.  Juror 11's response to counsel's question regarding the credibility of testimony offered in exchange for a plea bargain forecloses that showing.  The very obvious strategic reason to retain Juror 11 was his statement that he might question the credibility of testimony offered in exchange for a plea bargain.  Thus, in leaving Juror 11 on the jury, defense counsel secured the presence of a juror who had already indicated he might not believe the critical testimony of Lee and Johnson, testimony that both witnesses offered in exchange for plea bargains.

The strategic advantage to the presence of Juror 6 is not apparent from the record. That does not make it a strategic mistake to include her, but it leaves open the question of whether counsel acted within the bounds of professionally competent assistance when he left her on the jury.  Yet, Petitioner still cannot prevail on his ineffective assistance claim because he has failed to demonstrate any prejudice from counsel's decision to leave either juror on the jury.

Petitioner cannot show that the presence of either juror had any effect on the judgment.  First, the witnesses that the jurors knew did not offer testimony of direct significance to a determination that Petitioner was guilty of the charged offenses.  Both officers testified that

they were not present the day of the shooting and did not investigate that crime.  Officer Pace responded to a "shots fired" call weeks before.  He found a car that may have been involved and secured the scene.  He had no knowledge that tied that incident to the incident at issue in Petitioner's trial.  Officer Bates was involved after the shooting, but not in investigating the incident.  She only participated in an attempted arrest of Petitioner (and witness Johnson) on one occasion.  Even if Jurors 11 and 6 took every word each of those witnesses said as absolute truth, it would not have offered a whit of evidence that Petitioner had committed the offenses with which he was charged.  Moreover, both jurors indicated that they would not take the testimony of the witnesses they knew as absolute truth.  Juror 6 indicated her acquaintance with Officer Bates 20 years earlier would not interfere with ability to be a juror.  (Trial Tr. V, ECF No. 16-13, PageID.508) And, Juror 11 indicated that he would decide what was true based on the evidence, not his knowledge of the witness testifying.  (Trial Tr. I, ECF No. 16-9, PageID.335.)

When a juror's impartiality is called into question, the relevant issue is "'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality be believed.'"  *Dennis*, 354 F.3d at 520  (quoting *Patton*, 467 U.S. at 1036).  To the extent the impartiality of Juror 11 and Juror 6 was called into question by their respective acquaintance with witnesses, they were rehabilitated by their subsequent statements that they could decide disputed issues based on the evidence.  On this record, Petitioner has failed to show any prejudice that followed from counsel's failure to challenge these jurors.

Petitioner's failure to show prejudice from counsel's alleged ineffective assistance means he has not shown cause for failing to challenge the jurors contemporaneously as state law requires.  Moreover, because the "prejudice" necessary to show ineffective assistance of counsel

is the same as the "prejudice" necessary to overcome the procedural bar, *Hall v Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009), Petitioner cannot show cause *or prejudice* and consideration of his juror partiality claim is barred by his procedural default.

### B.    Jail clothing

Petitioner next contends that the jury may have been tainted by seeing him "in clothing that reflected his incarceration."  (Pet'r's Appeal Br., ECF No. 1-1, PageID.60.)  It is unclear what Petitioner means by "clothing that reflected his incarceration."  Neither Petitioner's briefs nor his affidavits indicate that he was wearing his jail clothing.  The only record evidence regarding Petitioner's garb appears in the transcript from the first day of trial:

| | |
|---|---|
| Defense counsel: | [W]e discussed in chamber my allowing my client's family some time to get their clothes. |
| The Court: | Some time?  We all knew today was the date of the start of the trial. |
| Defense counsel: | Apparently miscommunication as to whom was responsible, Judge. |
| The Court: | We will wait a few minutes because the jury is ready to come up. |

*    *    *

| | |
|---|---|
| The Court: | Anything else? |
| Defense counsel: | Other than my client's apparel, we are prepared to move forward.  If need be I will buy him something. |
| The Court: | It's a matter of getting started.  He is not inappropriately dressed.  I would say today I can understand why you might want to upgrade.  But I have to say that he's not inappropriately dressed today. |
| Defense counsel: | Yes, sir. |
| The Court: | I will give him a little, about 15 to 20 minutes.  I'm not going to give him a whole lot of time.  I'm going to call for the jury at 9:30.  They will probably come up at a quarter to . . . . |

| Defense counsel: | Thank you. |
|---|---|
| Prosecutor: | Thank you. |
| The Court: | We will be in recess until about 9:30. |
| | (Recess taken from 8:45 to 9:30 a.m.) |
| The Court: | Back on the record of Mr. Reid.  Mr. Reid is still inappropriately dressed.  The family hasn't returned with a change of clothes.  The Court's going to proceed with jury selection and on the recess for exchange of clothes. |

(Trial Tr. I, ECF No. 16-9, PageID.325-326.)  After the jury was selected, the court took a lunch

recess.  After the jury left the courtroom, defense counsel informed the court that Petitioner's

family had brought different clothing for Petitioner.  After the recess, but before the jury returned

to the courtroom, the court stated: "Mr. Reid does have on a different outfit at this time.  And it's

still appropriate."  (*Id*., PageID.357.)

> The Michigan Court of Appeals recognized the constitutional significance of

requiring a defendant to appear before the jury in prison attire.  The appellate court, citing state

authority, noted that such attire might "undermine his or her presumption of innocence."  (Mich.

Ct. App. Op., ECF No. 16-19, PageID.642.)  That statement accurately reflects clearly established

federal law.  In *Estelle v. Williams*, 425 U.S. 501 (1976), the Supreme Court recognized that "an

accused should not be compelled to go to trial in prison or jail clothing because of the possible

impairment of the presumption [of innocence] so basic to our adversary system."  *Id*. at 504.

> The state appellate court did not grant Petitioner relief, however, because he had

"failed to establish the factual predicate for his assertions."  (Mich. Ct. App. Op., ECF No. 16-19,

PageID.642.)  The court of appeals searched the record for some indication that Petitioner was

compelled to stand trial—or at least participate in *voir dire*—in jail clothes; but, the only references

20

to Petitioner's clothing during *voir dire* were the trial court's statements that the clothing was "not inappropriate" even if counsel might want an "upgrade."  (*Id.*)

This Court must presume the truth of the state court's factual determinations regarding Petitioner's clothing.  Petitioner can overcome that presumption, but only with clear and convincing evidence.  Petitioner's unsworn cryptic reference to "clothing that reflected his incarceration" does not suffice.  Because Petitioner has failed to show that the state court's factual determination is unreasonable on the record, he is not entitled to habeas relief.

## V.    Ineffective assistance of counsel

Petitioner presents a long list of complaints about his counsel's performance as the basis for a claim that defense counsel rendered ineffective assistance.  Counsel was ineffective for: failing to impeach witnesses Lee and Johnson with their criminal histories; failing to raise the issue that the first Michigan State Police forensic report stated that the bullets found did not match any from recent shootings; failing to admit the first Michigan State Police report to refute the report admitted by the prosecutor; failing to move to strike testimony admitted in violation of a discovery order; failing to address prosecutorial misconduct; failing to present an alibi witness; failing to sufficiently advocate for his client; failing to thoroughly cross-examine witnesses; failing to file motions that would have been beneficial; failing to raise self-defense; and failing to preserve the *Lockridge* sentencing issue.[2]  (Pet'r's Appeal Br., ECF No. 1-1, PageID.61-63.)

Although Petitioner provided this same list of counsel's failures for the Ingham County Circuit Court, the Michigan Court of Appeals, and the Michigan Supreme Court—and now provides it to this Court—he has never supported his claims beyond providing the list.  The court

---

[2] Petitioner also listed counsel's failure to challenge jurors based on their acquaintance with witnesses as an example of counsel's deficient performance.  That ineffective assistance claim is addressed fully in § IV A above.

of appeals concluded that Petitioner's failure to do anything more than list supposed deficiencies

was fatal to virtually all of his ineffective assistance claims.  The appellate court explained:

> Reid has failed to support the remainder of his claims of ineffective assistance.
> Generally, we presume that counsel afforded effective assistance.  *People v Rockey*,
> 237 Mich App 74, 76; 601 NW2d 887 (1999).  The burden is on a defendant to
> establish the factual support for his or her claims otherwise.  *People v Hoag*, 460
> Mich 1, 6; 594 NW2d 57 (1999).  In this case, Reid phrases his assertions in the
> form of a list of supposed deficiencies.  Reid has failed to provide support or legal
> argument for his claims.

(Mich. Ct. App. Op., ECF No. 16-19, PageID.643.)

The court of appeals' rejection of Petitioner's unsupported assertions is entirely

consistent with clearly established federal law.  *Strickland* directs the court to presume "that

counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*,

466 U.S. 689.  Petitioner bears the burden of overcoming the presumption that the challenged

action might be considered sound trial strategy.  *Id.*  Where Petitioner does nothing more than list

purported deficiencies, he has provided nothing to meet his burden and this Court, like the court

of appeals, is left only with the presumption that counsel acted appropriately.  Therefore, Petitioner

is not entitled to habeas relief with regard to any of the claims of ineffective assistance where

Petitioner did nothing more than list a purported deficiency.

The court of appeals addressed Petitioner's more specific ineffective assistance

claims:

> Regarding Reid's more specific claims, we conclude that they lack merit.  First,
> Reid contends that trial counsel provided ineffective assistance in failing to
> impeach Lee and Johnson with their criminal histories.  The failure to cross-
> examine a witness constitutes ineffective assistance only if the failure deprives the
> defendant of a substantial defense.  *People v Dixon*, 263 Mich App 393, 398; 688
> NW2d 308 (2004).  "A substantial defense is one that might have made a difference
> in the outcome of the trial."  *People v Kelly*, 186 Mich App 524, 526; 465 NW2d
> 569 (1990).  In this case, Lee and Johnson both testified that they were offering
> testimony in relation to plea agreements.  Reid does not indicate what additional
> information trial counsel should have presented or how this information deprived

him of a substantial defense.  We conclude that Reid has not met his burden to establish ineffective assistance.

Second, Reid contends that counsel was ineffective for failing to assert a claim of self-defense.  Defense counsel may be ineffective for failing to reasonably investigate a defendant's substantial defenses.  *See Strickland*, 466 US at 691.  However, "[t]he role of defense counsel is to choose the best defense for the defendant under the circumstances." *Pickens*, 446 Mich at 325.  In this case, the surveillance video showed the victim entering the party store, notice Reid in the store, and abruptly leave.  Reid followed the victim out of the store and fired shots at him.  There is no indication that Reid fired his weapon at the retreating victim with an honest and reasonable belief that the use of deadly force was necessary.  See MCL 780.972(1)(a); *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011).  Accordingly, trial counsel's decision not to pursue this defense was reasonable, and there is no indication that the decision prejudiced Reid.

(Mich. Ct. App. Op., ECF No. 16-19, PageID.642-643.)

Petitioner does not address the court of appeals' resolution of those two ineffective assistance claims in his submissions to this Court.  He merely repeats, word-for-word, the argument he raised in the court of appeals.  Petitioner does not explain what information his counsel failed to put before the jury during the cross-examination of witnesses Lee and Johnson.  Petitioner makes reference to those witnesses' criminal histories, but the record reveals that the jury heard a lot about the criminal histories of both witnesses.

Similarly, Petitioner does not explain the foundation for his claim of self-defense.  Petitioner offers nothing to counter the surveillance video that showed him follow a retreating target out of the store and fire his gun.  Petitioner does not provide any basis for this Court to conclude that the appellate court's characterization of the record is unreasonable.

With regard to the cross-examination and self-defense ineffective assistance claims, Petitioner has failed to demonstrate that the court of appeals rejection of the claims is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on his ineffective assistance claims.

## VI.    Sentencing

Petitioner argues that his sentence violated the Sixth Amendment because the Michigan sentencing guidelines were applied using facts found by a judge rather than a jury. Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).  In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines.  One group of five justices concluded that the federal sentencing guidelines ran afoul of the Sixth Amendment.  Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  Petitioner was sentenced in Ingham County a little over one year after *Alleyne*.

24

At the time Petitioner was sentenced, however, the Michigan Court of Appeals had already concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence; it had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013).  The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment and, as a consequence, the question was not a matter of clearly established Supreme Court precedent. *Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .").  The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences."  *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

Shortly before Petitioner was sentenced, the Michigan Supreme Court granted leave to appeal on an application that raised the *Alleyne* issue.  *People v. Lockridge*, 846 N.W.2d 925 (Mich. 2014).  When the Michigan Supreme Court issued its decision a year later, the court decided the *Herron* decision was wrong, reasoning that, because the "guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*.  *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015) (emphasis in original).  As a consequence, the *Lockridge* court held that the

mandatory application of Michigan's sentencing guidelines was unconstitutional.  The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only.  *Id*. at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review."  *Id*. at 523.  Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ."  *Id*. at 522 (footnote omitted).  If a remand was appropriate, the supreme court called upon the trial court, on remand, to determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ."  *Id*. at 524.

The Michigan Court of Appeals followed *Lockridge* in Petitioner's case, remanding the case to the trial court.  On remand, the trial court concluded that, even free of the unconstitutional restraint of mandatory minimum sentencing guidelines, it would not have imposed a materially different sentence and, indeed, reaffirmed Petitioner's sentence under the discretionary guidelines.  (Ingham Cty. Cir. Ct. Order, ECF No. 16-21, PageID.930-931.)  Any Sixth Amendment problem created by ***mandatory*** sentencing guidelines at Petitioner's initial sentencing hearing was corrected on remand.  There can be no Sixth Amendment issue when a judge relies upon facts other than the facts found by the jury when exercising sentencing discretion.  Accordingly, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:    April 9, 2020                            /s/ Ray Kent
                                                   Ray Kent
                                                   United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).